IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 JUN -7 PM 4: 03

 DISTRICT COURT
N.D. OF ALABAMA

TRACY W. MUHAMMAD,

    Plaintiff,

vs.

Case No. CV-00-J-0350-S

UNITED STATES POSTAL SERVICE
by and through William J. Henderson,
Postmaster General,

    Defendant.

ENTERED

JUN 7 2001

## MEMORANDUM OPINION

Currently pending before the court is the defendant's motion to dismiss, or in the alternative, for summary judgment. (doc. 25). Said motion has been fully briefed. The court has reviewed the motions, the memoranda of law and the evidentiary submissions of the defendants.

### Procedural History

Plaintiff commenced this action by filing a complaint (doc. 1) on February 10, 2000. On October 12, 2000 an amended complaint was filed (doc. 18) alleging that defendant United States Postal Service (USPS) discriminated against him on the basis of his religion (Muslim), in violation of 42 U.S.C. § 2000e (Count One) and breach of contract between the USPS and labor organization (Count Two).

41

Upon consideration of the pleadings, memoranda of the parties, and evidentiary submissions, the court concludes that defendant's motion for summary judgment is due to be granted.

### Factual History

In the light most favorable to the plaintiff, the facts of this case are as follows: Plaintiff is employed by the United States Postal Service in Birmingham, Alabamae as a custodian.(Muhammad depo., p.6-7). On February 6, 1997, the plaintiff requested Annual Leave for February 19-22, 1997. (Coleman declar., ¶3). The plaintiff requested leave in order to attend celebration events for a major Muslim holiday known as Saviour's Day. (Muhammad depo., p.38-39). Though the actual holiday was on Sunday, February 22, the plaintiff told his supervisor that he needed the extra days off in order to help "set up" the celebration events. (Coleman declar.,¶5). The plaintiff's request for leave was denied by his supervisor, Edward Coleman, so Plaintiff made a subsequent request on February 18, which was also denied by the supervisor with the approval of his manager, Tim Joiner. (Coleman declar., ¶6; Joiner declar., ¶2-5). The supervisor cited the fact that two other employees were already scheduled to take annual leave on these dates and that those two employees amounted to 12% of the work force in that section. (Coleman declar., ¶4).

The USPS agreement with the local union has different rules regarding annual

leave depending on the dates requested for leave. The dates of the plaintiff's request fall under the agreement's Incidental Vacation Rules. (1st Marcoux declar., ¶ 4) These rules state that 12% of employees in a section are entitled to annual leave on the day in question. (1st Marcoux declar., ¶7). Under this rule, annual leave is granted on a first come/first served basis. *Id.* Military duty, State and National Union Conventions, Leave Without Pay, Extended Sick Leave, and Jury/Court Duty all count within the twelve percent, and any fraction over .5 is rounded up to equate an additional employee. *Id.* Incidental vacation leave requests must be submitted by Tuesday of the prior week, but not earlier than six months before the dates requested. *Id.* The 12% absentee limit is not a mandatory limit because a supervisor has the discretion to allow more than 12% of the work-force in that section to be on leave "as service needs permit." (Exhibit B to 1st Marcoux declar.).

When the plaintiff's request for leave was denied, he was so aggrieved that he ultimately needed medical treatment for his emotional turmoil. He was seen by Dr. Prchal at the Veteran's Administration and took sick leave during February 19-22 to attend the celebration in Chicago. (Muhammad depo., p. 34-36, 56-57). His time off was credited as "sick leave" rather than "annual leave." (Muhammad depo., p. 34).

When the plaintiff returned to work, he submitted a note from his physician that stated that it would be better for the plaintiff if he were to be transferred to work under

a different supervisor. (Coleman declar., ¶8) On April 8, 1997, the plaintiff's supervisor requested that the plaintiff have a "fitness for duty" examination. (Coleman declar., ¶8). According to the supervisor, this request was based on the above mentioned note, his subjective impression that the plaintiff seemed to be acting differently, and his impression that the plaintiff had excessive absences. *Id.* Plaintiff contends that the examination was requested merely as a means of retaliation against the plaintiff for a grievance that the plaintiff had filed with his Union on March 6, 1997. (2nd Marcoux declar., ¶3). The grievance alleged a breach of the labor agreement between the Union and the USPS based on the supervisor's denial of plaintiff's request for annual leave. (2nd Marcoux declar., Ex. A, B). The grievance was abandoned prior to arbitration, but the plaintiff admits that he was fairly represented throughout the grievance process. (2nd Marcoux declar., Ex. C; Muhammad depo., p. 17).

On or about March 21, 1997, the plaintiff contacted an Equal Employment Opportunity (EEO) counselor with the USPS regarding a claim of religious discrimination based on his denied annual leave. (Martorell declar., Exh. A). The USPS investigated and the EEOC recommended a finding of no discrimination and the USPS issued a final agency decision on November 8, 1999, finding no discrimination had occurred. (Martorell declar., Exh. B) Plaintiff then filed this

lawsuit on February 10, 2000. (doc. 1).

The plaintiff also filed for bankruptcy under Chapter 13 on January 24, 1997. An Order Discharging Debtor After Completion of Chapter 13 Plan was issued on April 4, 1999, effectively ending the plaintiff's bankruptcy procedure.[1] (Certified Copy of Plaintiff's Bankruptcy Case 96-00607-TBB-13).

### Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

---

[1] Though this court is aware of Defendant's claim that the plaintiff's suit is barred under the doctrine of judicial estoppel due to his failure to disclose the present cause of action to the bankruptcy court, this court finds no need to presently address that issue.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the non-moving

party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252.

## Legal Analysis

The plaintiff states four claims of religious discrimination under Title VII in his complaint (doc. 18): (1) disparate treatment, (2) disparate impact, (3) failure to accommodate, and (4) retaliation. See 42 U.S.C.A. § 2000e-2. For the reasons set

forth below the court finds that each claim is without legal merit.

1. Disparate Treatment

Plaintiff claims that he was intentionally treated differently from other employees when he was denied leave. (doc. 18). Plaintiff must carry the initial burden of establishing a *prima facie* case of discrimination. The burden of proof then shifts to the defendant to establish a legitimate, non-discriminatory purpose for the employment action. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Harris v. Shelby Co. Bd. of Educ.*, 99 F.3d 1078, 1083 (11th Cir.1996). Adapting the elements of a *prima facie* case of racial discrimination to religious discrimination, the plaintiff must prove: (1) that he is a member of or practices a particular religion; (2) that he was entitled to a job benefit; (3) that he did not receive the job benefit; and (4) that someone outside of his protected class was treated more favorably under similar circumstances. See *Gunning v. Runyon*, 3 F.Supp.2d 1423, 1428 (S.D.Fla. 1998); see also *Edwards v. Wallace Community College*, 49 F.3d 1517 (11th Cir.1995); *Breech v. Alabama Power Co.*, 962 F.Supp. 1447, 1457 (11th Cir.1997).

Viewed in the light most favorable to plaintiff, defendant agrees that plaintiff can meet prong 1 and 3 of his burden. However, plaintiff has failed to present any facts supporting his contention that he was entitled to have the annual leave request granted (prong 2). The only evidence before the court is that plaintiff was not entitled to leave

because the 12% limit had been met when plaintiff requested his leave. (Coleman declar., ¶4).

Additionally, plaintiff cannot show that other employees outside plaintiff's protected class were treated more favorably than the plaintiff under similar circumstances (prong 4). Plaintiff submits as evidence leave slips that show that other, non-Muslim workers were granted time off during the dates that plaintiff requested leave. (doc. 33). These requests are not similar to the plaintiff's in that they are for minimal amounts of time (between 1.14 and 3 hours, not two days), and that one of them was for sick leave, not annual leave.[2] Though the plaintiff testified that there have been times when the supervisor allowed other people off when their absence would violate the 12% guideline, he could not give specific examples other than the names of employees who received leave for the minimal time listed above. (Muhammad depo., p. 52-53).

> Plaintiff further argues that
>
> On Christmas, senior level, Non-Muslim employees are given the privilege to elect Christmas as an off day. Savior's day is to the Muslims what Christmas is to Non-Muslims. The defendant's failure to grant [the plaintiff] the same privilege is differential treatment which violates Title VII's prohibition against religious discrimination.

---

[2] Another request shows that one employee requested leave for the 18th and 19th of February, but it is unclear whether leave was actually granted as the supervisor checked both the "approved" and "disapproved" boxes. The plaintiff offers no evidence that the employee was actually granted leave.

9

("Brief in Support of Plaintiff's Response to Defendants' Motions for Summary Judgment", p. 8-9.) The agreement between the USPS and the labor union provides specific rules regarding leave during December and January that differ from the Incidental Vacation Rules that apply in February. (1st Marcoux declar., ¶7). The USPS rules clearly state that no one has to be granted leave in December or January except for Christmas Day, and that on Christmas Day, "[s]enior qualified employees within the work areas and tour shall be given choice of Christmas holiday work."[3] (1st Marcoux declar., ¶5; doc. 33, Ex. 9). Plaintiff presents no evidence that any employee can have the three days before Christmas off in order to "set up" for the holidays. The only day anyone gets off is the actual day of Christmas. Since Plaintiff was given the actual day of Saviour's Day off, there is no merit to his claim that he was treated any differently than Christian employees. Furthermore, Christmas was designated as a federal holiday by Congress, not the USPS, so the fact that everyone gets Christmas Day off is not evidence of any sort of discrimination by the USPS. See 5 U.S.C. § 6103.

The plaintiff has not met his burden of showing that there is a genuine factual dispute as to whether or not other non-Muslim employees have been treated differently in similar circumstances. Therefore, the plaintiff has failed to establish all

---

[3]There is no dispute here as to the legality of leave schemes based on seniority.

of the elements of a *prima facie* case of disparate treatment under Title VII.

2. Disparate Impact

The plaintiff has apparently abandoned his disparate impact claim as he failed to argue that claim in his response to the defendant's motion for summary judgment. The evidence submitted does not support a disparate impact claim. "[D]isparate impact theory prohibits neutral employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group." *EEOC v. Joe's Stone Crab*, 220 F.3d 1263, 1274 (11th Cir. 2000) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)). In order for the plaintiff to establish a *prima facie* case of disparate impact, he must: (1) identify the specific employment practice challenged, (2) show that statistically the practice has a significant discriminatory impact on his protected group (Muslims), and (3) establish a causal nexus between the practice and the disparate impact. See *EEOC*, 220 F.3d at 1274; *Mac Pherson v. University of Montevallo*, 922 F.2d 766, 771 (11th Cir.1991); 42 U.S.C. 2000e-2(k).

Plaintiff offers no evidence, statistical or otherwise, that the leave system at the USPS discriminates against Muslims as a group. Leave is granted under the incidental vacation rules on a first come/first served basis. (1st Marcoux declar., ¶7). Plaintiff offers no evidence that this has a disparate impact on Muslims or any other

religious group. Therefore, Plaintiff has failed to establish a *prima facie* case of disparate impact. Because of this failure the USPS need not offer any valid reasons for its actions or policy. See *Hawkins v. Ceco Corp.*, 883 F.2d 977, 981 (11th Cir.1989); *Breech*, 962 F.Supp. At 1457.

3. Failure to Accommodate

Plaintiff also states a claim for failure to accommodate under Title VII. Section 2000e(j) of Title 42 makes it unlawful for an employer to discriminate against an employee based on religion unless the employer can demonstrate that there was no way to reasonably accommodate the employee's religious practices or observances without placing undue hardship on the conduct of the employer's business. Plaintiff claims that by denying him leave for the Saviour's Day celebration, the USPS failed to accommodate his religious observance, and therefore violated 42 U.S.C. § 2000e-2. (doc. 18).

In 1997, Saviour's Day fell on a Sunday, which was plaintiff's regular day off. (Schedule of Events of Saviors' Day 1997). Plaintiff provides no evidence that the USPS had a duty to provide the plaintiff with extra time off to "set-up" for the celebration for the three days preceding the actual holiday. This is especially true in light of the fact that granting the plaintiff leave would have violated the 12% rule in the labor agreement. The plaintiff actually took sick-leave for the duration of the

celebration, and the USPS in no way penalized the plaintiff for taking sick-leave. Though they were under no duty to do so, the USPS actually granted the plaintiff's request to have all four days off by allowing him to take sick-leave under such questionable circumstances. An employer's duty to accommodate does not mean that he has to accommodate the employee in the manner the employee prefers. *Beadle v. Hillsborough City. Sheriff's Dept.*, 29 F.3d 589, 592 (11th Cir.1994). The employer need only offer reasonable accommodations. *Id.* Allowing an employee to take unpaid leave, like sick leave, is a reasonable accommodation. See *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 68 (1986)."[W]here the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end." *Id.* There is no evidentiary basis for Plaintiff's failure to accommodate claim.

4. Retaliation claim

Plaintiff alleges that his being sent for a Fitness for Duty examination on May 20-21, 1997 was an act of retaliation for his filing a grievance with the union. (doc. 18). 42 U.S.C. § 2000e-16(a) states that all personnel actions affecting federal employees or applicants for federal employment must be free from discrimination based on race, color, religion, sex, or national origin. The 11th Circuit has stated that "[f]or a public employee to establish that an employment action has infringed a constitutional right the employee also must demonstrate that he or she has suffered

13

some sort of adverse employment action for exercising the right." *McCabe v. C.E. Sharrett, Jr.*, 12 F.3d 1558, 1563 (11th Cir.1994). "'Adverse employment action' is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands." *Id.*

For the plaintiff to have an actionable retaliation claim under Title VII, he must show that he has been the victim of some sort of adverse decision. The plaintiff in this case has presented no evidence that being sent for the fitness for duty examination adversely affected him in any way. He has lost no pay, benefits, leave time, or status as an employee, and the USPS paid for the exam.

In addition to showing an adverse personnel action, the plaintiff must also show that the grievance he filed with the Union was causally related to his being sent for the exam in order to establish a *prima facie* case of retaliation. See *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir.1999). The plaintiff's supervisor stated that he sent the employee for the exam because he feared for the safety of others in the department and for himself. This is a valid, legitimate reason for ordering the exam. See *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir.1999). The plaintiff has produced no evidence that contradicts the supervisor's stated reason for the exam. Therefore, the plaintiff has failed to produce sufficient evidence to support a retaliation claim.[4]

---

[4] Plaintiff did not argue his retaliation claim in his response to the defendant's motion for summary judgment.

Count two of Plaintiff's complaint states a claim under 39 U.S.C. § 1208 (b) which grants federal district courts subject matter jurisdiction in cases involving "violation of contracts between the Postal Service and a labor organization representing Postal Service employees." Case law developed under Section 301 of the Labor Management Relations Act may be used to interpret questions arising under 39 U.S.C. § 1208(b). See *Bowen v. United States Postal Serv.*, 459 U.S. 212, 232 n.2 (1983). The statute of limitations on a section 301 action is six months and begins to run from the date that "the plaintiff knew or should have known of the Union's final action or the employer's final action, whichever is later. *Adams v. United Paperworkers International Union A.F.L.-C.I.O.*, 189 F.3d 1321, 1322 (11th Cir.1999). Final action is the "point at which the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage. *Id.*, quoting *Proudfoot v. Seafarer's International Union*, 779 F.2d 1558, 1559 (11th Cir.1986).

Therefore, the latest date at which the statute of limitations on the plaintiff's present action may have started to run is November 4, 1997, when the Union withdrew his grievance prior to arbitration. (2nd Marcoux declar., ¶3, Ex. C). This suit was not filed until February 10, 2000, over a year and a half after the statute of limitations had expired. Therefore, defendant's motion for summary judgment is granted on this claim.

15

## Conclusion

This court having considered all of the evidence, memoranda and briefs, finds that no genuine issue of fact exists. Therefore defendant's motion for summary judgment is due to be granted.

**DONE** and **ORDERED** this the ___7___ day of June, 2001.

                                                                    _____
                                                                    INGE P. JOHNSON
                                                                    UNITED STATES DISTRICT JUDGE